19 F.3d 7
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES of America, Appellee,
v.
Victor FELIZ-CUEVAS, Defendant, Appellant.
 No. 93-1771.
 United States Court of Appeals,
First Circuit.
 February 17, 1994
 
 Appeal from the United States District Court for the District of Massachusetts
 Miriam Conrad, Federal Defender Office, on brief for appellant.
 Robert E. Richardson, Assistant United States Attorney and A. John Pappalardo, United States Attorney, on brief for appellee.
 D.Mass.
 AFFIRMED.
 Before Torruella, Circuit Judge, Aldrich, Senior Circuit Judge, and Cyr, Circuit Judge.
 TORRUELLA, Circuit Judge.
 
 
 1
 Defendant-appellant Victor Feliz-Cuevas ("Feliz") was indicted in the United States District Court for the District of Massachusetts for unlawful reentry into the United States following deportation, in violation of 8 U.S.C. Sec. 1326. Feliz pleaded guilty to the indictment. At the sentencing hearing, Feliz moved for a downward departure from the applicable sentencing guideline range, which was denied by the district court. Smith now appeals this denial. We affirm.
 
 I. FACTS
 
 2
 On February 7, 1992, the Immigration and Naturalization Service ("INS") ordered Feliz deported to the Dominican Republic. On February 11, 1992, immigration officials gave Feliz INS Form I-294, which advised Feliz that:
 
 
 3
 any deported person who within five years returns without permission is guilty of a felony. If convicted he may be punished by imprisonment of not more than two years and/or a fine of not more than $1,000.00.
 
 
 4
 Feliz read and signed the document, acknowledging that he had received it.
 
 
 5
 INS Form I-294 only set forth the penalties generally applicable to a violation of 8 U.S.C. Sec. 1326, but did not state the more severe penalties that applied to aliens, who, like Feliz, had been convicted of an aggravated felony. In fact, the penalty which Feliz would face if he illegally returned to the United States without permission was imprisonment for up to 15 years.
 
 
 6
 Feliz then reentered the United States and was arrested. On October 23, 1992, the grand jury returned an indictment charging Feliz with a violation of 8 U.S.C. Secs. 1326(a) and 1326(b)(2), illegal reentry after deportation subsequent to being convicted of an aggravated felony. Feliz pleaded guilty on March 16, 1993.
 
 
 7
 With respect to sentencing, Feliz moved for a downward departure from the applicable sentencing guideline range, contending that a mitigating circumstance warranted such a departure. Feliz submitted an affidavit which stated that as a result of the INS giving him Form I-294, he believed that the maximum penalty for reentering the United States was two years' imprisonment; that he did not know that the maximum penalty was fifteen years' imprisonment; and that, had he known that, he would not have returned to the United States.
 
 
 8
 At the sentencing on May 26, 1993, the district court held an evidentiary hearing to determine whether Feliz had relied on INS Form I-294 when he decided to return unlawfully to the country. Feliz testified that he relied on the INS form for his belief that he faced no more than two years' imprisonment if he reentered the United States. Feliz also testified that he would not have returned to the United States had he known that the maximum penalty he would face was 15 years, or that the guideline sentencing range was 46-57 months. The district court denied Feliz's motion for a downward departure and sentenced him to 46 months in prison.
 
 II. SENTENCING
 
 9
 Feliz challenges the district court's denial of his motion for a downward departure from the sentencing range set forth in the Sentencing Guidelines. Feliz argues that by virtue of INS Form I-294, the government erroneously informed him of the consequences of returning unlawfully to the country. Smith submitted an affidavit and testified that he relied upon the INS form when he decided to return to the United States. Therefore, Feliz contends that this constituted a mitigating circumstance that the Sentencing Commission had not taken into account when it formulated the guidelines, and it warranted a downward departure. Feliz argues that the district court erroneously concluded that it lacked the legal authority to depart from the guideline sentencing range based on the INS notice.
 
 
 10
 The government argues that the district court understood that it had the power to consider whether the INS notice provided a ground for departure from the Sentencing Guidelines, but it refused to exercise its discretion to depart downward.
 
 
 11
 Generally, a district court's decision to refuse to exercise its discretion to depart downward from the sentencing guidelines is not appealable. United States v. Smith, No. 93-1722, slip op. at 10 (1st Cir. Jan. 28, 1994) (citing United States v. Lombardi, 5 F.3d 568, 571 (1st Cir. 1993); United States v. Rushby, 936 F.2d 41, 42 (1st Cir. 1991)). "Appellate jurisdiction may attach, however, where the district court's decision not to depart is based on the court's view that it lacks the legal authority to consider a departure." Smith, slip op. at 10.
 
 
 12
 As a preliminary matter, the record seemingly indicates that the district court concluded as a factual matter that Feliz did not rely on the INS notice when he decided to reenter the United States.[1] Moreover, the record indicates that the district court did not believe that this was the kind of circumstance that justified a downward departure. Thus, the district court refused to exercise its discretion to depart downward, and this decision is not appealable.
 
 
 13
 The record, however, could also be read to support the conclusion that the district court believed that it lacked the legal authority to depart under the Guidelines based on the INS notice. We will therefore review the district court's decision in light of Smith, No. 93-1722 (1st Cir. Jan. 28, 1994), where we recently considered this precise issue.
 
 
 14
 In Smith, we stated that we did not believe that the Sentencing Commission considered an unusual situation like the INS giving an individual being deported Form I-294, which misstated the penalty for reentry, when it formulated its guidelines. Id. at ll. We found, however, that this situation did not present the kind of circumstance a sentencing court should consider to support a downward departure, because it was antithetical to the purposes of the sentencing system, which is to deter criminal conduct. Id. at 11-12. Feliz, like the defendant in Smith, implicitly admitted that he intentionally committed a felony.
 
 
 15
 The sentencing court cannot countenance [the defendant's] purposeful decision to engage in felonious conduct, and grant him the benefit of a downward departure, because [the defendant] understood the penalty he would face to be relatively minor. Rather, the sentencing court was required to sentence [the defendant] within the applicable sentencing range, so that [the defendant] and others would be deterred from illegally reentering the country in the future.
 
 
 16
 Id. at 12. Therefore, the district court's denial of Feliz' motion for a downward departure was proper, and its decision is affirmed.
 
 
 17
 Affirmed.
 
 
 
 [1]
 Feliz also argues that the district court's denial of Feliz's motion for a downward departure resulted from an error of law regarding the standard to be used in determining whether Feliz reasonably relied upon INS Form I-294. Feliz' estoppel argument, which involves the question of whether Feliz' reliance was reasonable, is inconsequential in light of our decision that Feliz' reliance on Form I-294 was simply not the kind of circumstance that could warrant a downward departure